O’NeaMi, J.,
delivered the opinion of the Court. •
This Court concurs in opinion with the Chancellor, in his construction of the act of 1824.
.On the question, whether a decree of the Court of Equity constitutes a lien on land, similar to that of a judgment at law, so as to *218 bind it in the hands of a purchaser, we have, unanimously, come to a different conclusion from that maintained by the decree.
At common law, a judgment did not bind the land of the defendant’ f°r reason, that the execution went against his goods alone, and his land was not liable, by any process,- to be taken in satisfaction ; but after the st. Westm. 2nd. 13 Edw. 1, cap. 18, which subjected a moiety of the defendant’s land to an extent, by writ of elegit, it was held, that the judgment bound from its recovery. Gilbert on Executions, 37. 2 Inst. 394, 395. This lien was by the statute of frauds and perjuries, 29 Car. 2, c. 3, sec. 15, P. L. 83, restricted, in its commencement, to the day on which the judgment was signed. It would hence seem to follow, from the effect produced by subjecting land to execution, for the payment of debts, that although, by the common law, the recovery of a judgment created no lien on the goods of the defendant, yet that it did create a lien on land, so soon as by statute it was made liable to be taken in execution to satisfy the judgment.
In the English Court of Chancery, a decree is regarded as acting against the defendant, personally. The non-performance of it is a contempt, to punish which, and to compel the performance of the decree, the only processes resorted to are, the writs of attachment, and sequestration. The first operates directly upon the person of the defendant, the latter, upon his estate. The writ of sequestration is only issued on the special order of the Chancellor, and for a contempt clearly made out. The effect of it is, to sequester the rents and profits of the defendant’s estate, until he performs the act required, and thus discharges the contempt. That there was no process, issuable, as of common right, whereby the estate of the defendant was rendered liable' to the satisfaction of a decree in chancery, was, manifestly, the only reason why such a decree, has been held, in England, to create no lien on the defendant’s estate; for in the case of Morrice v. The Bank of England, Ca. Temp. Talb. 217, it is, in all other respects, held to be equal to a judgment at law.
In this State, there has been a most material change of the En. glish law, both as to the enforcement of judgments at law, and of decrees in equity by execution. Before the st. 5 Geo. 2, c. 7, land in this State was not liable to be sold under execution ; but by that statute, it is declared to be liable to the like remedies, proceedings, and process, in any Court of law, or equity, to which personal estate is-liable. P. L. 250. Under this statute, land became liable to levy and sale under a fieri facias ; and if the Court of Equity *219 bad then possessed the power of issuing executions against the goods of defendants, little doubt could have been entertained, that. decrees would have bound land. That power, however, did not belong to the Court, until it was conferred by the act of 1785 ; by which, it is provided, that, “ whereas, the mode of enforcing decrees in the Court of Chancery, is tedious, and often defective : be it therefore enacted, that in all cases where payment of money is decreed by the said Court, it shall be lawful for the party, to whom such payment is to be made, to sue forth, at his option, either the usual process for compelling performance óf the said decree, or a writ in nature of fieri facias, to make the estate, both real and personal, of the party, by whom, such money is to be paid, liable in satisfaction thereof, in the same manner as it is on such a writ from the Court of Common Pleas; and that the sheriff of the district, in which the estate levied upon lies, shall have the same power and authority to sell and convey the same, as he hath on a fieri facias from the Couijt of Common Pleas.” P. L. 361. The consequence, as we have already seen, of subjecting by statute, the defendant’s real estate, to the payment of a judgment, by means of an execution, is, at common law, to create a lien from the recovery of the judgment, and by the statute of frauds and perjuries, from the day on which the judgment is signed. The grant, therefore, of the common law process of fieri facias, to enforce a decree in equity, against both the real and personal estate of the party, gave to such decree, as a necessary incident, the lien of a judgment at law.
But even under the words of the act, without resorting to a common law inference to aid us, we should be compelled to come to the same conclusion. The act authorizes the party, to whom money is decreed to be paid, to sue out a writ in the nature of a fieri facias, to make the estate, both real and personal, of the party, by whom money is decreed to be paid, liable to the satisfaction of the decree; and how can it be made liable,- but by giving to the decree the same lien as a judgment at law ? If it had not this lien, the party could easily defeat the satisfaction of the decree, by a sale of his land so soon as it was pronounced, and before, under the rules of the Court of Equity, execution could be issued. Other creditors, too, by judgments at law intervening between the decree and execution, might sweep off the means of satisfaction. To make the party’s estate liable to satisfy the decree, it must have the same lien as a judgment at law, and the act certainly intended to give it that effect.
*220 The decree, to Have this lien, must, however, bé a decree for the payment of money ; for that is the only case in which, by the act, the party can resort to a fieri facias. If the decree is for the per-f°rmance of a specific act, then to compel performance, an attachment, of sequestration, must be resorted to. It could have no lien, therefore, for it only looks to, and requires the party to perform the specific act. But there may be such a thing as a specific, as well as a general lien, under a decree. When the decree sets apart a particular piece-of property, for the payment of a sum of monéy, it would create a specific lien, and if not aided by the general lien, it would stand pretty much on the footing of a mortgage; and would, in general, be subjected to most of the rules relating to liens created by the act of the parties : but where the decree also ad. judges the money to be paid out of the whole of the party’s estate, then it creates a general lien, which follows all his property, as well that which is subjected to the specific lien, as the rest; and the party, to whom the money is ordered to be paid, may resort to his fieri facias, and compel satisfaction, by a sale of the estate. But the case of a specific lien, wherever the decree ascertains, and directs a sum of money to be paid, is aided by; or is, perhaps, merged in, the general lien which the law gives to it as a decree for the payment of money.
The decree in the case before us, establishes a sum of money to be due by the defendants in the original bill, and not only subjects the land in dispute to the payment of it, but also directs that the balance, if any, after the sale of the land, shall be paid out of the estate of their testator. It is, therefore, a decree for the payment of money, and has a lien, from the time it was pronounced, on all his real estate. The casé of Woddrop b. Price, 3 Desaus. 203, is an authority sanctioning the conclusion, that decrees for the payment of money bind land, in the same manner as judgments át law. Other decisions of the former Court of Appeals in Equity, it is believed, followed up, and maintained the same conclusión ; but for the want of repórts of the cases decided in that Court, fbr many years, we have been unable to refer to the cases themselves.
The decree having a legal lien on the whole of the testator’s real estate, it is unnecessary to consider the questions made on the defence set up, of purchase for valuable consideration, without notice. The purchasers took subject to a legal lien, and are liable to be divested by a sale under the decree. The complainant has a legal title to enforce his decree; and the defendants have but an equity to oppose to it, and must of course fail. The plea of pur. *221 chase, for a valuable consideration, without notice, can never prevail against a legal title, to which there is no obstacle to a recovery at law. It is only a protection against an equity. It was not necessary for the complainant to have made these defendants parties. He might have enforced his decree without noticing them; and if he had, of his own mere motion, made them parties, I will not say, that the Court would have thought itself authorized to decree against them. But as a favor to the defendants, and to enable them to protect themselves if they could, he was directed to amend his bill, and make them parties. This has accordingly been done, and the defendants have been heard in defence of their title; and failing to protect themselves under the statute of limitations, it follows, from our view of the lien of the decree, that the land in dispute must be adjudged to be liable to the satisfaction of it.
It is, therefore, ordered, and decreed, that so much of the Chancellor’s decree as dismisses the amended, or supplemental bill, be reversed : and, that the tract of land containing one thousand and fourteen acres, purchased by the defendant, Bolán, on the 8th October, 1819 ; the tract of land, containing two hundred and thirty-four acres, purchased by Fitts, on the 7th February, 1820 ; the tract containing two hundred and ninety-five acres, purchased by the defendant, Huguenin, from Buckner, who purchased on the 11th January, 1819; the tract of two acres, purchased by the defendant, Heyward, on the 23d June, 1819; the tract containing eight hundred and seventy-seven acres, purchased by him on the 5th June, 1821; and the tract containing seven hundred and thirty-eight acres, purchased by him on the 8th March, 1824; be sold in pursuance of the original decree, in this case, for satisfaction of the complainant’s demands,
Johnson, J., and Harper, J., concurred.

Decree modified.